UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA GREEN,

        Plaintiff,        Case No. 12-CV-10475

vs.        HON. GEORGE CARAM STEEH

ADDISON TOWNSHIP and JERRY
MORAWSKI, in his individual and
official capacities,

        Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (DOC. # 37)

INTRODUCTION

Plaintiff Linda Green filed this employment discrimination lawsuit against both her former employer and her supervisor, alleging age discrimination under federal and Michigan law. Before the court is defendants' motion for summary judgment, which is granted for the reasons given below.

BACKGROUND

This is a case brought by Ms. Linda Green, a former clerical employee of the Addison Township Fire Department. Ms. Green was 55 years old when she filed suit against her former employer, claiming age discrimination under the ADEA (Count I); age discrimination under the Michigan ELCRA (Count II); and additional constitutional violations against Addison Twp. for its discriminatory practices. Plaintiff originally named numerous individual defendants, but through voluntary dismissals, the case now

has two remaining defendants: Addison Township and her former boss–Fire Chief Jerry Morawski.

When plaintiff was hired, in March 1999, she began in the position of "clerk." Her title was changed to "Administrative Assistant" in April 2000, at which time she received some additional job duties. In 2009, her title was changed again, to "Office Manager," and she again was assigned additional job duties. Plaintiff's pay went from $8.50 per hour to over $15.00 per hour over the course of her tenure with Addison Township.

Plaintiff alleges she was unlawfully terminated from the fire department on April 9, 2010. At the time of her termination, plaintiff was the only clerical employee of the fire department. There were three full-time firefighters and one fire chief, Jerry Morawski. (Apparently now there are five full time firefighters, four of whom are over the age of 40. Additionally, twelve of the twenty-five on-call firefighters are over the age of 40 and eight are over 50.) Additional "paid on-call" personnel filled in when additional firefighters were needed. According to defendants, plaintiff was terminated because the taxable value of properties in the Township had dropped precipitously between 2008 and 2010, and the Township had to cut costs. In order to create a balanced budget, Morawski asserts that he had to cut the full-time clerical position and consolidate it with a firefighter position, because he could not continue to provide adequate fire/rescue services if he cut a firefighter. Accordingly, defendants assert, Morawski combined the job duties of the office manager position with those of a full-time firefighter. That position added a full-time firefighter to the day shift, who was to

perform the clerical duties of "office manager" when not responding to fire/emergency calls. Specifically, according to defendants,

> The redefined position provided immediate savings from operations expenditures. First, a single employee's salary was divided between fire/rescue operations and clerical services. Second, the redefined position added a third full-time Firefighter/EMT to the day shift. The third full-time Firefighter/EMT could be assigned to respond to each initial call for medical service. The third full-time Firefighter/EMT could also be assigned to a second rescue truck in case of a second request for service or a multiple victim accident. The redefined position eliminated the need for a "paid on-call" response to the first and subsequent request for service and reduced dramatically overtime hours paid to full-time Firefighter/EMTs called to second and multiple victim requests for service. Third, the redefined position provided the Township with superior daytime fire/rescue coverage as "paid on-call" Firefighter/EMTs are not always available during daytime working hours (8:00 a.m. to 5:00 p.m.).

Defendant's Brf. at 4.

Defendant Morawski has testified that the new position was created for plaintiff, and that he intended to send her to Firefighter I and II training and to train her to obtain EMT-B certification as well. Morawski told plaintiff that she would have to pass the "North Oakland Agility Test" in order to go on to further training. Plaintiff was given an overview of the Agility Test, and she was given some pointers and preparation assistance by members of the Fire Department, specifically on techniques for the "simulated rescue" and ladder exercise portions of the test. On the testing date, March 13, 2010, plaintiff first attempted the "simulated rescue" portion, and was not able to carry/drag the 125 pound dummy more than two minutes. This resulted in plaintiff failing the test. Plaintiff received a notice letter on March 16, and her last day was April 9. The consolidated position was given to Angela Haines, in her late 20s or early 30s, who was then working for the Township as a "paid on-call" firefighter/EMT.

Defendants state plaintiff's termination was based solely on her inability to meet the minimal qualifications for the position. This is contested by plaintiff, who makes various arguments.  She highlights that only a small number of the Township firefighters (either full time or on-call) were required to take the Agility Test, that Addison Township in fact ran on a surplus for all of the years in question, and thus no cut was actually needed (in this vein she also points to an expensive SUV purchased with Township funds for the chief's "personal" use, as well as a new ambulance, fire truck, and sign for the station), and also suggests that the fire chief hired Ms. Haines out of personal friendship.

Before the court is defendants' motion for summary judgment, brought on procedural and substantive grounds.  It is addressed below.

### STANDARD

The entry of summary judgment is appropriate when the record demonstrates that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Sadie v. City of Cleveland, 718 F.3d 596, 599 (6th Cir. 2013).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to

the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

A.  Timeliness of Action

Defendants first argue that the plaintiff's claims under the ADEA are time barred, due to her failure to file a charge with the EEOC within 180 days of her termination. Plaintiff responds by simply asserting she had 300 days to file the charge, because Michigan is a "deferral state," and that she acted within that time frame.

The parties do not dispute the relevant dates here. Plaintiff received notice of her termination on March 16, 2010, and the last day of her employment was April 9, 2010. It appears that she did not file an independent charge of discrimination with the Michigan Department of Civil Rights, filing only a charge of discrimination with the EEOC on November 2, 2010. Defendants assert this was 207 days after the date of her termination, and beyond the statutory time limit.[1]

In order to file suit under either Title VII or the ADEA, a plaintiff must file a timely charge of discrimination with the EEOC, which is generally 180 days. However, if the alleged unlawful practice occurs in a state which has enacted its own laws prohibiting the alleged discriminatory practices, such as Michigan in this case, it is considered a "deferral state." Under these circumstances, plaintiff asserts she had 300 days to file suit, citing Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001). Plaintiff's complaint states that charges were filed with the applicable Michigan Department. However, defendants assert they were not, and plaintiff does not respond to this assertion in her response brief.

The court notes that the November 2, 2010 EEOC charge was presented on a form that includes a box with language stating "I want this charge filed with both the EEOC and the State or local Agency, if any." Exhibit Q to Defendants' Brf. As noted above, there is no indication that a charge was filed with the Michigan Department of

---

[1] The case of Amini v. Oberlin College, 259 F.3d 493 (6th Cir. 2001) holds that the statute of limitations actually begins on the date of the allegedly discriminatory decision, rather than (as in this case) the date of termination. However, in this case the dates are just 24 days apart (plaintiff's termination letter was received approximately 24 days prior to last day of work), and does not affect the court's analysis.

Civil Rights (MDCR) prior to this filing. However, although research has not made the answer to this question perfectly clear, it does not appear that an earlier charge with the MDCR was necessary. As described in Dircken v. State of Michigan Dept. Of Educational Vocational Rehabilitation, 35 F.3d 565 (6th Cir. 1994), and confirmed by the court's independent internet research, MDCR and the EEOC coordinate their efforts under a work sharing agreement, and it is not necessary to file a charge with both agencies. Id. Therefore, filing with the EEOC constitutes filing with the MDCR, and vice versa. As held by Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614, 622 (6th Cir. 1983), "[a]ll that is required is that a filing with the state agency be made with sufficient time to allow an effective filing with the EEOC within 300 days after the discriminatory act." Since the EEOC/MDCR filing here occurred well before the 300 day period expired, the court will not grant the motion on this basis. See also Maurya v. Peabody Coal Co., 823 F.2d 933 (6th Cir. 1987) (discussing circuit precedent following the decision of Oscar Mayer & Co. v. Evans, 441 U.S. 750 (1979)).[2]

B.   Whether the ADEA claim is barred against the individual defendant

Defendants next argue that defendant Morawski is not an "employer" as that term is used under the ADEA and that he thus cannot face liability under the statute. "Employer" in the ADEA is defined as "a person" having "20 or more employees...and

---

[2]Moreover, it appears the charge was filed before 240 days had expired, which means that the state agency had 60 days to process the charge before reaching the 300 day mark, which has been suggested as the required "combined effect of sections 2000e-5(c) and (e)." Martinez v. United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1373, 772 F.2d 348, 350 (7th Cir. 1985).

any agent of such person."[2] As defendants contend, Morawski neither had 20 employees nor acted as an agent of Addison Township. Although Morawski was plaintiff's supervisor, this does not make him an "agent" of the employer, as supervisors sued in their individual capacities do not meet the statutory definition of "employer" under the ADEA. See Hiler v. Brown, 177 F.3d 542, 546 (1999) (holding that "supervisors do not meet the statutory definition of 'employer'"); Ford v. Tennessee Human Rights Commission, 2000 WL 125903 at *1 (6th Cir., Jan. 28, 2000); Wathen v. General Electric Co., 115 F.3d 400, 404 (6th Cir. 1997). Plaintiff's citations are not on-point and do not assist in her argument whatsoever. Thus the ADEA claims may be pursued against only the municipality, and not against Morawski in his individual capacity.

C.  Merits of Age Discrimination Claims

Claims under the ADEA and Michigan's ELCRA are analyzed under the same standards. Geiger v. Tower Auto, 579 F.3d 614, 626 (6th Cir. 2009). The ADEA prohibits an employer

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or] to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of an individual's age[.]

---

[2] The parties also dispute whether the Fire Department had 20 employees (plaintiff's argument is that the "on-call" firefighters constituted employees). However, the court notes, no one argues that *Addison Twp.* at large had fewer than 20 employees.

29 U.S.C. § 623(a). The ELCRA likewise prohibits discrimination "against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... age[.]" Mich. Comp. Laws. Ann. § 37.2202(1)(a).

Successful age discrimination claims can demonstrate either intentional disparate treatment or disparate impact of a facially neutral employment practice. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993); Smith v. City of Jackson, 544 U.S. 228, 240 (2005). Either direct or circumstantial evidence may be used. Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410 (6th Cir. 2008). Either way, the plaintiff "retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 177 (2009).

In making the argument that plaintiff cannot establish an age discrimination claim under either the ADEA or Michigan's ELCRA, defendants first point out there is no direct evidence of age discrimination. This is not disputed by plaintiff. Under these circumstances, the court employs the standard established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff's *prima facie* case of discrimination must first be established, by showing that she "was (1) a member of protected class, (2) subject to an adverse employment action, (3) qualified for the position from which [she] was rejected or terminated, and (4) either replaced by a person from outside the protected class or treated differently than a similarly situated employee from outside the protected class." Hein v. All America Plywood Co., 232 F.3d 482, 488-89 (6th Cir. 2000).

In their argument section about plaintiff's *prima facie* case, defendants

concede that plaintiff was over the age of 40 and was subjected to an adverse employment action. However, defendants assert that plaintiff was not qualified for the position sought (the combined clerical-fire fighter position) for the reason that she did not pass the physical test and she could not go on to Firefighter I or Firefighter II training. Defendants further assert that Ms. Haines, the individual chosen for the position, was not similarly situated to plaintiff. Ms. Haines had completed both Firefighter I and Firefighter II training and was a certified EMT, and had been working as an on-call firefighter for Addison Township for almost six years.

While plaintiff points out that Ms. Haines was not required to take the Agility Test, defendants counter with their argument that firefighters who have already completed both Firefighter I and II training and are already employed by the Addison Township Fire Department are not required to test. Defendants offer Morawski's affidavit to demonstrate this. Defendants say there is no material question of fact concerning whether or not plaintiff was qualified, and that the inquiry should end there. Alternatively, defendants argue that if plaintiff is found to have established a *prima facie* case, they have offered a legitimate, non-discriminatory reason for the termination, and that plaintiff has not demonstrated pretext.

Plaintiff argues that she was not given time to prepare and train for the various tests, while Ms. Haines was permitted sufficient time (one full week of training) to prepare herself for the clerical aspects of the job she did not know before. Plaintiff also argues that the Agility Test was not a listed requirement on the job description, and that Morawski changed the requirements of the clerical job to require only "secretarial experience," not "3 years of secretarial experience," as the job requirement had stated

previously, thus conveniently fitting Ms. Haines' experience.  Plaintiff calls these "suspicious changes" to the job requirements and argues that cumulatively she has established her *prima facie* case.

Additionally, plaintiff argues that defendants' claim of financial necessity is only pretext for discrimination.  She asserts that the Fire Department consistently operated at a surplus, and that the defendants' claim of economic necessity has no basis in fact.  Specifically, she points to the purchases made by Morawski, noted above, and says this evidence shows the financial explanation was merely pretext.

Ultimately, the plaintiff's arguments and authorities are not persuasive.  In fact, the court finds that Morawski attempted to retain plaintiff, but could not, despite the offered training.  As defendants assert, this case is thus unlike cases such as Phuong v. Nat'l Academy of Sciences, 927 F.Supp. 487, cited by plaintiff.  The court is convinced that plaintiff was neither qualified for the Office Manager/Firefighter/EMT position nor similarly situated to Angela Haines.  Moreover, even if the court found a question of material fact as to these questions, plaintiff has not provided any evidence to support the argument that defendant was not acting out of a good faith belief that redefining plaintiff's former position was appropriate as a cost savings measure to deal with impending economic pressures.  The plaintiff's expert witness simply does not alter this analysis.  The court finds that plaintiff is not close to demonstrating that age was the "but-for" cause of her termination.  See Gross, 557 U.S. at 177.  Therefore, summary judgment for the Township on the ADEA claim, and both defendants on the state age discrimination claims, is appropriate on this basis.

D.      Alleged Additional Constitutional Violations of Addison Township

In this claim, which she brings against the Township, plaintiff asserts that "Defendant Morawski, who has the sole authority to hire and fire employees of the fire department, was never given any kind of training in regards to equal opportunity employment." She further argues that "[b]y failing to adequately supervise Defendant Morawski's termination practices, Defendant Addison Township implicitly authorized his unconstitutional behavior." In this way, plaintiff attempts to frame a Monell claim against Addison Township.

Judgment will enter for Addison Township on this claim. Plaintiff has not supported this claim with any evidence whatsoever that Addison Township has a policy of not training its supervisors or that its policies or practices amount to violations of equal protection. This claim merely reiterates parts and pieces of her prior arguments and cannot survive the motion for summary judgment.

E.      Defendants' Motion to Strike Plaintiff's Expert Witness

In this motion, defendants point out that as of October 15, 2012, when plaintiff gave answers to interrogatories, she disclosed that she had "no expert witnesses at the time of this writing." Without supplementing those answers, plaintiff included the affidavit of Michael Pivoz (Exhibit J of plaintiff's response brief), a CPA retained as an expert witness by plaintiff to analyze Addison Township's budget reports. Defendants assert this affidavit was improperly produced after the close of discovery, was not disclosed as required under Fed. Civ. P. R. 26(a)(2), and should be stricken. In response, plaintiff argues the failure to disclose did not harm defendants, who were in possession of their own budget reports all along.

As noted above, the court did not find plaintiff's expert report to be of any assistance to plaintiff's arguments in this matter. The motion is thus DENIED AS MOOT.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is hereby GRANTED. Judgment will enter for defendants.

**IT IS SO ORDERED**.

Dated: April 16, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 16, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---